OPINION OF THE COURT
Martin Evans, J.
This is a motion by way of order to show cause, in an action commenced by service of the order together with the summons and complaint on July 6, 1984.
Plaintiffs, who are tenants in an apartment house as to which a noneviction offering plan was filed on or about August 23, 1983, seek an injunction against any sales by the sponsors on the ground that an amendment dated April 2, 1984 to the plan (the Third Amendment) is a discriminatory inducement and therefore is violative of the proscription set forth in General Business Law § 352-eee (2) (c) (i).
Plaintiffs also seek a declaration that the Attorney-General acted arbitrarily in accepting the plan, and also seeks to enjoin the defendants, both the sponsor and other tenants from violating the terms of a no-buy pledge signed by the individual tenant defendants.
The Attorney-General, the sponsor and the selling agents and all of the individual tenant defendants have moved to dismiss the complaints against them.
*155 Under the plethora of arguments and counterarguments it is clear that the parties, aside from the Attorney-General, are seeking to further their economic best interests in the ways that are given to them by law.
The questions for decision are few. They revolve around a portion of the offering plan which was designed to induce a sufficient number of tenants to vacate the premises, in order for the sponsor to sell the vacant apartments and thereby to attract the required number of purchasers so that the plan could be declared to be effective, within the time permitted by law.
The original offering plan was filed with the Attorney-General in August 1983. For this noneviction conversion to be effective, the effectiveness of the plan must be declared by the end of November 1984. Since the plan was a noneviction plan, it was necessary that 15% of the apartments be sold to purchasers. There are 164 apartments in the building.
As of July 15, 1984, six insider tenants have purchased their apartments, and 18 outsiders had purchased vacant apartments. Comprising the 18 are 10 apartments, which were vacant before the Third Amendment was filed; and of the 12 apartments which were vacated as the result of the Third Amendment, 8 have been sold. Of the 18 outside purchasers, 11 have already moved into their apartments and the court is advised that 6 more are planning to move in.
The relevant portion of the Third Amendment provides as follows: “Any eligible tenant, as defined in the Plan, who has not purchased an Apartment Unit, who voluntarily agrees within twenty (20) days after the presentation date of this Third Amendment to vacate his apartment on or before July 15, 1984 will receive from the Sponsor a lump sum payment in the amount of $7500. per room, except that the first ten such Eligible Tenants who elect * * * will receive from the Sponsor a lump sum payment of $15,000. per room.”
Plaintiffs claim that the terms of this Amendment create a “discriminatory inducement” in violation of the proscriptions of General Business Law § 352-eee (2) (c) (i). That section states, in pertinent part: “As to tenants who were in occupancy on the date a letter was issued by the attorney general accepting the plan for filing, the purchase agreement shall be executed and delivered pursuant to an offering made * * * without * * * discriminatory repurchase agreements or other discriminatory inducements.”
The statute may be read, therefore, to bar discrimination in the offering plan which results in the purchase of an apartment *156 by a tenant in occupancy, induced by a plan which contains a discriminatory repurchase agreement or any other discriminatory inducement to purchase the apartment.
Under this reading of the statute, which seems to be a plain reading of it, the words “discriminatory repurchase agreement * * * or other discriminatory inducement” relating to or causing the purchasing agreement, there is no prohibition of inducements to vacate the apartments even if that inducement was intended to, appears to be, or in fact does discriminate among tenants who are induced to vacate. The statute, in that reading, merely requires equal nondiscriminatory inducements to purchase, to be given to those tenants who purchase their apartments.
Another, and more strained reading of the statute would extirpate the words “[a]s to tenants who were in occupancy * * * the purchase agreement shall be executed and delivered” and would merely provide that “the offering plan shall not contain discriminatory repurchase agreements or other discriminatory inducements.”
There is no prohibition against move-out inducements, which may be made freely by a sponsor or indeed, by an outsider who wishes to purchase a particular apartment.
Well settled is the proposition that the offering of a vacate allowance, to induce a tenant to surrender the apartment, is permitted. (Hillman v Kersch, NYLJ, Dec. 29, 1983, p 12, col 5 [Sup Ct, Queens County]; 201 E. 25th St. Tenant Assn. v Goldstein, NYLJ, Nov. 23, 1983, p 12, col 4 [Sup Ct, NY County].)
Under the plain reading of the statute, the Third Amendment would not be prohibited.
If the statute were to be given the more restricted reading, the question here would be limited to whether the making of an inducement to vacate an apartment, given to all tenants, but as a greater price to the first 10 persons who accept it, is “discriminatory” within the meaning of the statute. Improper discrimination would “make a difference in treatment or favor on a basis other than individual merit” (Webster’s New Collegiate Dictionary [1977]).
Discrimination may be in existence at the outset of a plan, in that offers may be made to certain persons and not to others, although the members of both groups have identical qualifications for the purposes of the plan.
It can be suggested that an offer which on its face is open to all, is discriminatory in reality since not all persons to whom it *157 is made can afford to or are unable for other reasons to accept the offer.
Since that would require that a plan cater to the least common denominator and undoubtedly would never be made, the necessary conclusion is that this construction would not reflect the legislative intent of the statute.
If there were ambiguity, the opinions and conclusions of the agency charged with the enforcement of the statute would be given great weight by the court, and would be adopted if it were not unreasonable. In this case, the Attorney-General, who is charged by law with the application of this statute, has concluded here that the Third Amendment is not violative of the statute. In fact, he has shown by affidavit that the use of a move-out fee, or a vacate allowance, has been permitted in many other plans that he has accepted for filing and the practical construction of the statute is persuasive.
That the instant plan offers a greater inducement to the first 10 persons who accept it, than to others, is not considered by him to violate the statute, since the offer was open to all tenants, and each had an equal opportunity to be among the first 10 to accept it.
Indeed, there is no showing here, by anyone, that there was any tenant who, being desirous of accepting the offer, was denied the opportunity of being among the first 10 persons who subscribed within the time permitted.
In a sense, all offers to sell any object are discriminatory, since not all persons are in a position to purchase. Some are not by reason of their financial status, others by reason of lack of desire, and others may not purchase although desirous of doing so, by the fact that there may be a finite number of objects to sell so that all may not partake.
These reasons, however, do not make an offer, or an inducement, discriminatory. So long as an offer is made on equal terms to all tenants, it does not give one person a greater inducement to accept the offer than it does to another.
To discriminate is “to make a distinction”, “to make a difference in treatment or favor on a basis other than individual merit” (Webster’s New Collegiate Dictionary [1977]).
The inducement here was offered equally to all tenants. Each one had an equal right to be numbered among the first 10.
A price inducement based on time is valid. The use of an “insider price” until a certain time and a higher price at a later date is commonly understood to be nondiscriminatory although, *158 in its result, it does prevent persons who cannot afford to purchase at a particular time, but who may be able to later, from obtaining the lower price.
A price inducement, whether it be to buy or to move out, of a given number of dollars per room, has never been held to be an improper discrimination.
There are statutory analogues which support this conclusion. Under the Securities Exchange Act of 1934, and the Williams Act, rules relating to tender offers have been in existence for many years. Under those rules, offers that are known as “two tier” offers, similar to the vacate allowance here, have been held to be valid and nondiscriminatory. (Radol v Thomas, 534 F Supp 1302 [1982]; Marietta Corp. v Bendix Corp., 549 F Supp 623 [1982].)
Although plaintiffs refer to proposed rule changes under the Securities Exchange Act, these rules, although proposed in 1979, have never been adopted. (See, Fed Sec L Rep [CCH] No. 1028, at 24-26 [July 15, 1983].)
As to the Attorney-General, the motion to dismiss the complaint is granted. His acceptance of the Third Amendment was lawful, reasonable and proper. Insofar as plaintiffs seek to join the Attorney-General as a party to their private contract concerning the “No-Buy” pledge, he is not a proper or necessary party to that dispute. He is not required to investigate or adjudicate that cause of action. (See, 136 E. 64th St. Tenants Assn. v Bloom, 86 AD2d 808.)
Defendant Mcllvain, a former tenant in the building, has moved to dismiss the plaintiffs’ complaint against her. She is one of the tenants who accepted the sponsor’s offer to pay $15,000 per room for vacating her three-room apartment.
The question before the court is whether or not her acts were a violation of her promises, made in a document known as a “No-Buy Pledge”.
The pertinent parts of the “No-Buy Pledge” are to be found both in the “declarations” and in paragraph 1 of the promissory portions of the agreement. They are as follows:
“I understand that:
“(c) My right to purchase any apartment, without being limited by this Agreement, is a valuable right and by entering into this Agreement, I voluntarily suspend this right in return for other Pledges doing so.
“1. I will not purchase, sell or assign my rights in any apartment nor will I agree to purchase, sell or assign my right to purchase any apartment in the Building unless and until”.
*159 If there is any ambiguity in this agreement it must, in accordance with well-settled rules of law, be construed against the plaintiffs, who prepared the document.
The right which defendant had, and which she agreed to suspend, was the right to purchase the apartment. She agreed that she would not purchase and she also agreed that she would not sell this right to purchase, nor to assign this right to purchase, until certain events occurred. So construed, the agreement does not prohibit the defendant from moving out or from vacating her apartment.
Neither does it prohibit her from accepting payment in return for her vacating and surrendering her apartment,
A similar result was reached in 201 E. 25th St. Tenant Assn. v Goldstein (NYLJ, Nov. 23,1983, p 12, col 4 [Sup Ct, NY County], supra). There, in almost identical language the “No-Buy Pledge” provided that “I will not purchase, or agree to purchase, or assign or sell my right to purchase any apartment in the building.” Since nothing was stated about receiving consideration for vacating the unit, the court held that it would not enjoin the compensation from being received.
Under the circumstances, defendant’s motion is granted.
The motion of the remaining defendants to dismiss the first, third and both fourth causes of action is also granted. Since the offer set forth in the Third Amendment was valid, the first cause of action, predicated on its alleged invalidity, cannot stand. The third cause of action is predicated on the unsupported assumption that the vacate allowance caused the individual defendants to breach the “No-Buy Pledge” and that it was, therefore, an inducement to the breach of a contract. As has been set forth above, however, the offer and acceptance of the vacate allowance was not such a violation.
The first “Fourth Cause of Action” is contained in paragraphs 30 through 41 of the complaint. It alleges that the sponsors do not intend to sell more of the apartments than is necessary for the affectuation of the plan, and therefore refused to enter into negotiations for further concessions with the tenants.
The allegations are conclusory; and there is neither claim nor evidence that the sponsor refused to sell any apartment in accordance with the offering plan. Neither is there any obligation on the part of the sponsor to enter into further negotiations or to make unspecified concessions. These claims do not constitute a cause of action.
The second “Fourth Cause of Action” in paragraph 42 restates the earlier causes of action, as to which it was claimed that there *160 was no remedy at law, and seeks monetary damages. For the foregoing reasons, it does not set forth a cause of action.
Plaintiffs’ motion for a preliminary injunction is denied and defendants’ motions are granted.