■ CONVERSION EQUITIES, INC., et al., Appellants, v SHERWOOD HOUSE OWNERS CORP. et al., Respondents.—In an action, inter alia, to recover damages for breach of contract, the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (Oppido, J.), dated December 9, 1986, as granted the defendants' cross motion to dismiss the complaint for failure to state a cause of action.

Ordered that the order is affirmed insofar as appealed from, with costs.

On May 1, 1985, the defendants David and Lillian Filippon received an initial offering plan notifying them that a proposal had been submitted to the Attorney-General to convert the building in which they resided to cooperative ownership. On September 19, 1985, the Filippons, in anticipation of the conversion, entered into a contract with the plaintiff, Conversion Equities, Inc., a corporation primarily engaged in the business of purchasing the subscription rights of tenants who dwell in buildings undergoing conversion to cooperative status. This contract provided, in pertinent part, that the Filip-

pons would "transfer or assign" to Conversion Equities, Inc., the right to subscribe to the cooperative shares allocated to the Filippons' apartment, upon completion of the conversion.

Thereafter, on November 15, 1985, the "Black Book" or final offering plan was accepted for filing by the Attorney-General. The final offering plan approved by the Attorney-General contained a "Special Offer" which was extended to all tenants, whereby the tenants were invited to sell their respective shares to the sponsor for a specified sum per share. The final offering plan also contained the following provision pertaining to the assignability of subscription rights: "The Subscription Agreements to be signed by tenant-purchasers under this Plan are assignable without the consent of [the] Sponsor, subject only to the provisions of this paragraph * * *. Tenant-purchasers must sign a Subscription Agreement, tender down payment, and provide Sponsor with the assignee's notarized affidavit stating that the assignee was not procured by [the] Sponsor and that he intends to personally occupy the Apartment". A form affidavit for prospective assignees stating that "I intend to personally occupy said dwelling unit as my own residence" was supplied by the sponsor and annexed to the final offering plan.

The pivotal point in the events which led to this litigation occurred when Conversion Equities, Inc., attempted to exercise its rights, as the assignee of the Filippons, by tendering the monthly rental payment for the apartment to the sponsor. The sponsor rejected the tender on the ground, *inter alia,* that Conversion Equities, Inc., had not filed, nor as a corporate entity, could it file an affidavit of intent to personally occupy the cooperative unit.

In September 1986 Conversion Equities, Inc., and its president, Kenneth Mann, commenced the instant action after learning of direct negotiations which allegedly culminated in a contract between the sponsor and the Filippons for the sale of their cooperative interests. The complaint charged, *inter alia,* that the Filippons had entered into an agreement to surrender their subscription rights to the sponsor in violation of their prior contract with Conversion Equities, Inc. The plaintiffs further alleged that the remaining defendants, which included the sponsor, its principals, its selling agent and the cooperative housing corporation, induced the Filippons to breach their contract with Conversion Equities, Inc., and that they were, therefore, guilty of tortious interference with contractual relations.

We find, as did the Supreme Court, that the contract between Conversion Equities, Inc., and the Filippons is unenforceable since the right to subscribe to the shares in the cooperative corporation, as the assignee of the resident tenants, was expressly conditioned upon the submission of an affidavit of intent to personally occupy the unit. Because the corporate plaintiff was incapable of "personally" occupying the cooperative unit, the sponsor, in withholding its consent to the assignment, acted in accordance with the restrictions imposed by the final offering plan. As a result, the Filippons, for reasons beyond their control, were unable to fulfill their contractual obligations to Conversion Equities, Inc., and their failure to perform is, therefore, excusable *(see, Metpath, Inc. v Birmingham Fire Ins. Co.,* 86 AD2d 407; *Studio 54 Disco v Pee Dee Jay Amusement Corp.,* 81 AD2d 911; *see generally,* 22 NY Jur 2d, Contracts, §§ 344, 355). Accordingly, the Supreme Court properly dismissed the causes of action sounding in breach of contract and struck the demands for specific performance of the contract and to recover damages for the alleged breach thereof.

Dismissal of the cause of action to recover damages for tortious interference with contractual relations is also warranted. The provisions of General Business Law article 23-A as well as local tenant protection laws prohibit sponsors from offering tenants discriminatory inducements in the process of a conversion of a residential rental building to cooperative ownership *(see,* Di Lorenzo, New York Condominium and Cooperative Law § 5:5, at 161). Thus, the sponsor and its affiliates were required to extend the "Special Offer" to all tenants, lest they be accused of violating statutory proscriptions against "discriminatory repurchase agreements or other discriminatory inducements" *(see,* General Business Law § 352-eee [2] [c] [i]; *Karpf v Turtle Bay House Co.,* 127 Misc 2d 154). In order to hold a party accountable for tortious interference with contractual relations, "the means employed to effect the interference [must be] wrongful" *(Guard-Life Corp. v Parker Hardware Mfg. Corp.,* 50 NY2d 183, 196) and not "incidental to some other, lawful purpose" *(see, Alvord & Swift v Muller Constr. Co.,* 46 NY2d 276, 281). In view of the fact that the sponsor was legally bound to offer to purchase the Filippons' cooperative shares, the material elements necessary to sustain a cause of action to recover damages for tortious interference with contractual relations are lacking in this case.

In light of the foregoing disposition, the plaintiffs' remain-

ing contentions need not be addressed. Kunzeman, J. P., Eiber, Spatt and Sullivan, JJ., concur.